Okay, looks like we're ready Thank you, may it please the court, counsel, my name is Kenneth Lawson, I'm representing myself pro se Your Honor, I have a cough drop in my mouth because I had a respiratory infection I had like this dry cough and I just can't get rid of so You know the acoustics are a little funny in this room But I think if as long as you you don't have to worry about speaking loudly But if you speak a little bit slowly that that will help us on our end And at the outset, I'll just say I do believe I've covered everything in my briefs If you have any questions, I'm more than willing to answer them I have a question about mootness Yeah, it's like most of these I'll call them sanctions have been satisfied or lifted. And so what's left? Well, again, one of the issues is did the court, the lower court, the district court Properly apply Voluntary cessation with respect to the issue of mootness. So when with respect to the no contact order Well on voluntary cessation, you know, we apply that as an exception to mootness where the defendant does something, right? Hence the term voluntary Cessation, but what the person you're talking about isn't a defendant, wasn't a defendant in the action. But I'm not arguing You're saying that the person who Requested. The faculty member who was the last one to say I don't want the no contact any more She pulled out, right, and asked for the no contact order to be lifted is my understanding But that's not an action that we attribute to the defendant, is it? Actually, it can and the reason for it is because that faculty member couldn't institute the no contact order It's the policy that allowed the defendant to institute a no contact order based on viewpoint Speech. Let me ask you So separate and apart from whether or not it's attributable to the defendant I think in order for the voluntary cessation exception to apply you would need to be able to show that the order is reasonably Likely to be reinstated and I'm not really following how that can be the case now that this investigation and discipline are complete So is this, are we going to be capable of repetition yet of interviews that we're going to do? No, I'm still on I'm still on the voluntary cessation So if you look at the provost's testimony at the preliminary hearing what he said was anytime I get, this is his testimony Because I asked him what rule did you apply? What supportive measures were in place once you ban me from campus and issued a no contact order Based on someone not like when I had to say what was my due process? So I said what rule did you follow? Here's what he said in his testimony. I had the inherent ability as the provost That if a faculty member comes to me and says that they're afraid of another faculty member to boot you off campus He said I cannot cite to a rule. I didn't cite to a rule He said that I didn't, the collective bargaining agreement doesn't allow me to do it. He says it's my inherent job to do it And so my point is right before the hearing happened this faculty member says, okay, I don't want the no contact order Let me ask this. This is a slightly different question, but I think we're headed toward the same set of questions. What is it right now? That you cannot do That you say you're entitled to do? Since I've been teaching this, I teach criminal procedure, criminal law, professional responsibility and evidence, and I run the Hawaiinuses project And so since I've been there I've been teaching in criminal procedure, Fourth Amendment, my activity in past civil rights movements and police shootings and run-on black man and Excessive force. I've been, and let me say this real quick, and these people knew that. That's not my question. My question is what is it that you Want to do, do you think you have a right to do, that you are now prevented from doing? Okay, when you look at the decision, it says when I describe at the faculty meeting my past Protests, those are veiled threats of violence And so now if I go in the class now and start teaching the same protests And I was talking to at the faculty meeting, the same protests I've been teaching for 10 years, the same footage from me protesting I can get in trouble because if a student says this is a veiled threat of violence, if I use the word right fragility, If I use the word woke, all these words are taken So any decision-maker's decision is saying that I created a hostile work environment. So what is it that prevents you from using those terms in class? Because Provost Bruno says this in his March 8th letter to me He says I would like to underscore the seriousness of the situation. As the decision-maker noted in her decision, The university promotes difference of opinion and the ability to raise concerns where there are perceptions that are impropriety. However, it is also expected that the faculty engage in such discussions with professionalism and collegiality. But my understanding is the original dispute arises not out of what you taught in class, But rather it was a dispute as to what you said in the faculty meeting. Isn't that right? And that's the same thing I say in class. But as I understand there was never any order that prevented you from doing something in class. Is that correct? It's the words. It's the same words I use in class. I use at the faculty meeting. My students don't leave class saying he's threatening us. He's a veiled threat, but they left the faculty meeting. Well, after four days after the faculty meeting when we called for a protest, then everybody got upset. Let me ask the question in a different way. Is there any order now in existence that prevents you from doing this? Or is it just that you are expecting that you might get such an order if you do these, say these words? Fair question. Right, so the last sentence in his admonition to me, he being a provost, Please be mindful that any future violations of university policy of a similar nature May result in a disciplinary action up to and including discharge. Okay, when he says similar nature in his letter, similar to what? Similar to the language that I had been sanctioned for. In the faculty meeting? Yes. So he wasn't talking similar to anything that you've done in class? No, the speech that I said in the faculty meeting is equivalent to the speech I say in class. Why can't I say it in class and not be sanctioned and then say the same thing in a faculty meeting and be sanctioned? Well, I've got a little trouble with that because it's not entirely clear to me from the record exactly what you said in the faculty meeting, nor is it of course entirely clear what you say in class. I mean, I understand about law teaching and so on. People say lots of things, including the professor, and there's a wide range of academic freedom that allows you to say all kinds of things, but it's not clear to me exactly what it is that you said in the faculty meeting that would have the same impact and would be subject to the same sort of discipline if you said it in class. Well, move the classroom aside. What did I say in the faculty meeting that wouldn't protect the speech? Well, you better tell me because I'm not sure exactly what you said because the record doesn't give me a transcript. No, so it's a verified complaint. You have a very thorough declaration by me. You have the decision by the decision maker. The records are there. Okay, so the question then would, I'll come back to it, what likelihood is it that you will say something that will be subject to the same discipline? What I'm saying is if, so you're talking about, we already know what's protected speech. True threats are not protected speech, right? And so they admit I made no true threats. What they say is veiled threats, which is what, me describing my past. How can me describing my past civil rights movement and activity be a present threat? But even if it is, it's a veiled threat. Who did I threaten? What did I say? And the record, it's all in the record. What they say is that when you describe your past protests and that you were not the turn-the-other-cheek type of protester, you believed in self-defense, that if the client puts their hands on you, you're not going to let them smack you, you will defend yourself. That was a veiled, this is what they said, this is in the record, or veiled threats of violence. There was an email, this is in the record, where after we called for the protest, we, being the boss of students and myself, called for a boycott and it went on a listserv. Then faculty members sent an email back saying we should have new rules or rules about collegiality in faculty meetings because can't call names. And I emailed back saying, come at me all you want, but don't lie on me. I didn't call anybody names. The decision took out the three words, come at me. Right out of it, I said that that's a veiled threat of violence. Come at me all you want, but don't lie on me. I didn't call anybody names. They didn't, the decision just takes out those three words and then sanctions me for that. My point, Your Honor, is my speech is being chilled. I'm afraid to go to class and speak on things because if a student anonymously or not says, you know, Professor Lawson was talking about those, remember those protests you got sanctioned for? He's talking about them again in class. And we, this is a threat of veiled threat of violence. Professor Lawson said white fragility and the decision said that that word contributed to workplace violence. He said the word woke. All those are the factors that got me sanctioned. What did I say? That was a true threat. What did I say to violence where my speech wasn't protected? Well, but you're back to what might go happen in class. But I understand all the sanctions that were in place, most of which seem now to have been removed, stemmed from the faculty meeting, not from anything you said in class. Is that correct? Oh, it stems from the boycott email that me and Balsa sent out. Right, so the faculty meeting on a Friday, after I got done speaking, I was invited to speak during the announcement section. I spoke after after, you know, communicating with the Balsa students about us being hurt, about no black people being on the panel. I spoke only when invited. When I got finished, that faculty meeting lasted four more hours. And the issue never came up. There was no disruption. No one called the police. No one said, Ken, calm down. No one said, you're threatening. No one said nothing. And then four days later, when they hadn't changed the event, the event was going to happen on a Thursday. When they had not changed the event, put black panelists on the event, Balsa now sent the email calling for the boycott. That email that was sent around is also part of the sanctions. So now if I want to use the listserv again and protest something else, if I want to use the listserv again and talk about black racism at the law school, I can get fired. Well, but as I understand the listserv now, it looks as though they've changed the policy with respect to the listserv. And that's why that's why the court didn't do the proper analysis because when you're talking about retaliation, personal retaliation, prior to me sending out that, there was no rule. In the evidence, in the record that I provided you, the lower court has. I have a question about that, if I could write there. I think you're right chronologically that that, the requiring prior permission to use the listserv wasn't a uniform policy at the time it was imposed upon you as a sanction, my word, but it became universally adopted later. And so I've looked to try to figure out whether there's case law, I don't remember seeing any, I don't see any cited where that is deemed retaliatory because initiated in one way. And the reason this matters, sir? Sir? That's all right, but I just kind of, I need to marry this up with where we are, which is I think you're needing to convince us where I think there's an absence of authority supporting that position. And I think you need to convince us that the district court abused her discretion, which again, no likelihood of success on the merits, which is why it seems to me, you know, without really supporting authority on that point, you've got a really tough battle. And I don't dispute that, but just let me talk about the Ninth Circuit Court of Appeals decision, Rodriguez. That's where I should look? Yeah. And so, Which Rodriguez? We've got several. Rodriguez versus Maricopa County. Okay. I know. Okay, go ahead. If I can just read this real quick. You bet. It says plaintiffs assert that the district court could have applied this harassment policy to suppress the professor's speech because he spoke in a limited or non-public form. For the purpose of this appeal, we assume plaintiffs are correct that the email list servers were limited or non-public of form. Even in a non-public form, the state actors may not suppress speech because of his viewpoint. And that is exactly what application of the harassment policy to the professor's emails and website would have done. Others, others could speak about race and culture without violating the policy. This professor's speech would be singled out for suppression because of his disfavored opinion on those issues. And so again, prior to me sending out that email, when President Trump got elected in 2016, there were numerous emails going on the same listserv calling Trump supporters homophobic, racist, and deplorables by our faculty to each other and they wanted to have a vote in a faculty meeting. Those types of political emails have been going on for years at the law school. You're going, you're missing my question here. I appreciate your point, but I'm raising a different question, which is, I think for this retaliation claim, you're, you're talking about the treatment of you vis-a-vis the list service, listserv, was disparate. It was, right, because when it was initially imposed, that sanction hadn't been imposed on the rest of the law school. I think it was in all of the other departments in the university, but not the law school, right? Then at some point it became applicable to all of the other professors at the law school, right? So I'm trying to figure out if there's an example in the case law that, where I can see a comparable fact pattern where something was initially imposed on it and it was, I think you have an argument that you were singled out, but then by the time the sequence is over, that's not the case. And all of this is factored into, I don't think you have clearly, clear support for that in our existing case law. Okay. And so when I look to see whether the district court abused her discretion in finding you hadn't shown a likelihood of success on the merits, it seems to me that the judge, she had no authority that would have supported that. So I don't see an abuse of discretion. I want to give you a chance. On the listserv issue. Yes. I wanted to give you a chance to tell me why you think, what you think I'm missing. On the listserv issue. Yes. Okay. I'll concede that. I mean, I think I agree with you on that. But I do think the court does in her November order state that I present a culpable claim on the unconstitutional application of the policies applied in my speech. And so the whole point I'm trying to make on that issue, this gets to a separate issue about ongoing harm and chilling effect. And why it's not moved is because once you say that there's a culpable claim of a first amendment violation in the retaliation context, the viewpoint context, that's automatically irreparable harm underneath the Ninth Circuit. Yes, you're arguing a voluntary cessation here. I tried to find whether you argued that in the district court. District court does not talk about the voluntary cessation argument. Right. And I look back at the papers, at least some of the papers that you'd filed in the district court, and I couldn't find an argument in the district court as to voluntary cessation. Did you argue voluntary cessation? Yes. In the reply brief I did. So what happens is I filed my brief in like May. Then the judge extended the hearing. And so right before the hearing is when they took away the no, when she rescinded her no contact order. Right before the hearing. So it was not in my initial brief because the issue hadn't came up with respect to the voluntary cessation of the unconstitutional practice to implement a no contact order. So we go to the hearing and I argue that in oral argument and then I also brief it when I reply. Okay. Okay. Thank you. I think we're ready to wrap up on that. Thank you. When you come back, we'll put two minutes on the clock.  Good morning, and may it please the court. My name is Justin Lenny, associate general counsel for the University of Hawaii and attorney for the appellees. The district court did not abuse discretion in denying the plaintiff's motion for preliminary injunction. An abuse of discretion only occurs if there is a clearly erroneous finding of fact or if the court used the wrong legal standard. Neither occurred here. The district court was correct when it determined that there is no imminent or immediate threat of harm that warranted injunctive relief. By the time that the motion for preliminary injunction was heard, Mr. Lawson's one month suspension without pay had already been served. All of the no contact orders with various faculty members had already been rescinded. He was allowed back onto the law school campus. And with the exception of the student listserv, which there were new restrictions as the court acknowledged, which no faculty member was allowed to access, all of the restrictions for other listservs, the faculty listserv and other listservs that the law school had, those restrictions were also lifted. But besides preventing Professor Lawson from using the listserv, were there any other reasons the university adopted the listserv restriction? Yes, your honor. After the events that occurred at the faculty meeting, and this eventually went to investigation, the associate dean, Dean Merkay, he had conversations with people on campus. And then he discovered that it was actually the practice of all of the professional schools within the University of Hawaii system to not allow unfettered access to student listservs by faculty members. And so based on that new knowledge that had happened, the law school also followed suit with the other professional schools on campus. I do want to discuss three main topics. The first is that under the challenge to the university's policies, there is no ongoing constitutional violation that would warrant prospective relief. I'd also like to discuss that the voluntary cessation doctrine does not apply to this case. And last, I would like to conclude with that the district court did correctly find that the appellant was unlikely to succeed on the merits of his claim regarding the restrictions to the student listserv. So first, as to the ongoing constitutional violation, the appellant's argument is essentially that because this retaliation had happened to them once, it could happen again. And in doing so, he primarily cites Riley's American Heritage Farms for the proposition that if there is an ongoing policy, that there can be prospective relief. However, that case was much different. In that case, the Ninth Circuit had reverse summary judgment, finding that there was a genuine issue of material fact as to whether there was an ongoing violation. In that case, the policy itself was the retaliation. So in that case, the district court said that there was a genuine issue of fact because the because the the retaliation in that case was that people could no longer go to Riley's Farms based on social media posts that Riley made that teachers were upset with. Here, the challenges are to the university's policies themselves. The university's non-discrimination policy and the university's non-workplace violence policy. These are general policies that apply to all faculty members and all employees of the university. It's not solely in retaliation to Mr. Lawson. And so for that reason, it is very distinct from the cases that Mr. Lawson is supporting. Let me ask you this. Let's assume that Professor Lawson does exactly what he did before in a faculty meeting that was going to take place in two weeks. Does the university say that it will not have the same reaction that it did before? Well, if he does the exact same thing again, then I do believe that the university would have the same response. But I think that's so so so it may be we've got capable repetition yet evading review depending on Professor Lawson does. So let's say he stands up again and says, for the record, I'm doing exactly what I did the last time. And if you think I'm varying from what I did the last time, tell me how I'm varying and I'll correct my behavior. So it is exactly the same thing. So it sounds like he's in control as to whether or not there's going to be capable of repetition or evading review. Well, I think I'd like to just focus on why he was penalized in the first place. It was not because of his pure speech. It was really based on his conduct in the faculty meeting that was found to be And how are you differentiating between speech and conduct? So what was the conduct as distinct from the speech? So the there was a decision maker in this that had specific findings as to what the conduct was the conduct included Abusive and hostile verbal attacks. That sounds like speech. Okay In the volume of his voice, it sounds like speech. Yeah That he was angry Uh tirade vitriol sounds like sounds like speech I understand but this is all still within the public employment context Well, but but the question was is there anything other than speech and I I don't I I only understood this was about speech I don't think there was conduct that involved, you know, pushing or shoving or anything of the sort. Is that contested? You just let her you put you just better examples of counsel when you just better examples of speech Is there anything else that would be conduct? Um One thing that I would like to add that was also important was that there was a repeated interrupting of other faculty members I understand Because of the repeated interrupting mixed with his volume mixed with What he was saying which was deemed to be threatening all of these things together Were under the totality of circumstances were deemed to be a violation of the university's Non-violence policy. So it does sound like the no contact order May be reasonably likely to recur I don't believe that's true your honor unless there is, you know an actual new complaints based on new conduct that Was caused by the appellant Unless there's some new event that's going to happen in which he threatens people under the non-violence policy Then it would not really be capable of occurring again I I do also want to briefly just touch on that the Briefing didn't really discuss the specific exception of repetition yet evading review. It was all based on voluntary cessation Well, there's those pretty much overlap they mean almost the same thing I understand it I I do want to touch on the voluntary cessation point though because and why voluntary cessation does not apply and so normally when voluntary cessation applies there is a Argument that the defendants make that the plaintiff lacks standing because of a new event that has occurred and therefore The case typically for some type of declaratory or injunctive relief is moot We have a much different context here in the preliminary injunction context where the district court only said that There was no longer any immediate harm that warranted prospective relief The appellees never argued that Mr. Lawson's entire case was moot We only argued that he was no longer entitled to this relief The rescission of the no contact order through a preliminary injunction because it had already happened And so the appellant essentially did obtain the relief that he sought prior to the order denying the preliminary injunction And last I do want to just mention that as a matter of fact It was not clearly erroneous for the district court to find that it was the other professor who had rescinded the no contact order Based on her declaration which said that she had requested that the order be rescinded Last I do want to just briefly mention in regards to this voluntary cessation and Ongoing harm argument is that in the briefs there are arguments that there should be a presumption of irreparable harm based on his colorable claim I wouldn't describe what the district court's order was as saying that he had a colorable claim She only said that there would be genuine issues of material fact arguably As to whether the policies were unconstitutionally as applied to him And that if he can prove that later on in the case He could be entitled to retrospective relief in the form of damages But there would be no there was no sufficient evidence to show that he would be entitled to prospective relief in the form of some type of injunction And there is case law in this ninth circuit and I did not cite it in the briefs But there is a case called randish versus city of tacoma That specifically states that there is no presumption of irreparable harm that arises in the first amendment retaliation context I was puzzled by the district court not discussing volunteer cessation or capable repetition You're debating review was in your view house How how how was that question or to what degree was that question presented to the district court? I don't think that the court even had to reach that issue of voluntary cessation I asked you a different question to what degree was that question presented to the district court was that argued to the to the district court It was argued. Um It was argued extensively in the appellant's reply brief in support of this motion for preliminary injunction the voluntary cessation argument Was I think it first appeared? Um in a footnote in our opposition, um explaining that the voluntary cessation doctrine wouldn't apply in this case because Factually, it was rescinded by the faculty member and not by the university. That's a voluntary cessation issue When you talk about capable repetition yet debating review It's always a little tricky right because you can get awfully speculative And as long as you're willing to dream up enough facts to get the stars to align again, you know Just in the same way just about anything is capable of repetition So, um, it sounds like the briefing didn't go there didn't talk about what would need to happen for this Circumstance to arise again I would agree your honor. I don't think that the briefs did specifically address capable of repetition yet evading review. Well opposing council Crafts that in a sort of a broad way and he's saying hey my my Right to speak freely is chilled at least in faculty meetings because I Spoke out and I had I suffered these consequences right, and um, so I think that he's he's he's doing that pretty broadly, um, This particular circumstance arose when there was an upcoming event a special event to celebrate I think it was black history month and a particular panel and then the conversation went Kind of sideways because there are very sharply divergent views as Judge fletcher professor fletcher often tells me about law school faculty meetings. I haven't been there. But um, So that's how that went Was the judge the district court judge obligated to consider whether the same kind of you know Heated conversation could arise concerning different topics or on a different occasion or different faculty members or what was she required to consider? Uh, well First there's a couple of facts that I wanted to just clarify There was not necessarily a panel that would have been at this event. It was really And it's going to be a right I don't think that the district court was required to consider whether uh, mr Lawson speech in the classroom would be affected by talking about the faculty I understand. I mean it wouldn't doesn't seem to me to be so outlandish to think that the faculty At a law school could have another conversation and They could have divergent views and maybe a heated conversation But how far was the district court to go in that in envisioning whether this particular circumstance could arise again where the? plaintiff might think that his free speech rights were being showed I think that there was insufficient evidence in the record and that was what the district court had ruled that there was insufficient Evidence to show that there was any type of ongoing or future event That would have transpired all of these was this a one-off event or had there been a pattern or a history of the plaintiff having You know divergent views and exchanging angry words with other faculty Is there any allegation that it was a pattern No, I don't believe that this was a pattern. Um, what had happened at the faculty meeting was so severe and different than any other Meeting that they had ever had with mr Lawson before which caused them to be terrified because they had never seen this side of them Until this faculty meeting and so I wouldn't say that there's not necessarily a pattern of abusive behavior by mr Lawson, it was really new and shocking to the other attendees that had been at that faculty meeting I don't think we have any other questions counsel Thank you, you're welcome To your question your honor if you look at the end of the hearing in front of the district court What i'm trying to explain to her the voluntary recession and that the policy that i'm arguing is unconstitutional Is the provost saying he has inherent power? To just issue no contact order if a faculty member says to him i'm afraid of another faculty member He says he has inherent authority to boot us off campus and issue no contact orders when I tell her that The district court responds and says that can't be true She says he has to give you a hearing. I said your honor. Can I make a record? She says no So i'm trying to make the record to show that that Because here's the concern about the voluntary secession You guys the courts can rule and then they can do it again to me tomorrow They can wait till this is over with and this is the reason why it's important that the state have that heavy burden Of demonstrating that okay, if you're going to volunteer if you're going to stop this policy Make sure that you prove to us before you walk out of here. It's not likely to reoccur again Counsel, you now have a heavy burden because you're looking you're trying to convince us that the district court abused her discretion When she found that you hadn't shown a likelihood of success on the merits, but but you had to do i'm sorry But you can review the facts de novo You can am I right am I right that there isn't an allegation I didn't see any allegation that this is a pattern or practice that you have engaged in in faculty meetings This looked like a one-off event where people had You know closely held views strongly held views and and exchanged the words, uh that we see in the record here But but but it did seem to be aberrational to me and no allegation to the contrary more importantly So, how is the district court wrong when she when she uh elides the question about capable of reputation yet debating Why would she think another aberrational event would arise because i've been making it because I have talked i've used the same words the same Examples for years. Why is it? Did you did you use for years the example where you said i'm not a non-violent person? Well, I never said that but even if I didn't Even if I even if I did say it, how is that workplace non-violence? Well, the problem she had is she had a record that showed other folks felt threatened And what i'm saying is it seemed to me that this was entirely aberrational a one-off event But if we're talking about the district court, sorry, and i'm sorry I just want to give you a chance to respond So what i'm looking at is whether the district court abused her discretion when she said you know what this is over The sanctions have passed you may or may not be entitled to damages, but I don't see a reason for injunctive relief here Why was she wrong about that because she's using protective speech to justify the threat How can what you mean by that? Because there's no true threats true threats are the ones that's not protected What who did I threaten? Right, if I right, I didn't I didn't threaten to kill anybody. I didn't threaten shooting anybody. Who did I threaten with violence? So your position is that she's wrong and just you know Abuse her discretion in deciding that you weren't going to be able to show that there was a true threat made She has to analyze my words under the first amendment to determine if they're constitutional My question was Forgive me, but you're over time. So I just want to know is that it is that that was a yes or no? You think she was wrong and that she couldn't determine um at the stage she was at That you were going to be able not going to be able to show a likelihood of success on the on the truth threat question Is that it? Let me but Yeah, I think she has to I think there has to be a hearing to determine were my words protected because if she's saying Um, and she does kind of say that at the end of her order She says i'm giving a culpable claim, but she's saying it's perspective with uh, um For damages right as opposed to perspective relief ongoing My whole point though is if I go to another faculty meeting and I said, you know You guys are discriminated against black people or native hawaiians or whatever and the faculty member don't like it Or the faculty meeting gets kind of heated or we have a political conversation about Which we've had Right When if my words are protected, but you claim that you're hurt by now all of a sudden I get banned from campus And there's been no evaluation was his words protect his speech and finally most law schools and universities have like, uh, Rules of collegiality and and and right we don't and what the university is doing here Is is trying to use the workplace non-violence and ego policies. I didn't discriminate against. Uh, nelson when I said was And she agrees. She's born in jamaica was raised in canada. I said you're not from here. That's not being discriminatory I mean if you know if you could be north korean south korean japanese chinese the fact that they're all asian doesn't mean That they're all alike I'm going to stop you there and see if there are any more questions from the panel No, it doesn't look like there are any more questions. I want to thank you both for your careful Briefing and attention to this matter and argument. We appreciate your patience with their questions We're going to take that matter under advisement and stand in recess for the day All right
judges: FLETCHER, CHRISTEN, DESAI